UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL GAINES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23 CV 1207 CDP |
| | ) | |
| WINDSOR C-1 SCHOOL BOARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Presently pending before the Court are several motions to dismiss plaintiff Daniel Gaines' *pro se* amended complaint wherein Gaines alleges that the defendants – the Windsor C-1 School Board and its members, the superintendent of the Windsor C-1 School District, the principal of Windsor High School, and the Jefferson County Circuit Court and Sheriff's Department and various of their employees – violated his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and conspired to violate his civil rights, all in relation to his protestation of the Windsor High School's manner of traffic control at the school. He brings this action under 42 U.S.C. §§ 1983 and 1985. For the following reasons, the allegations in Gaines' amended complaint fail to state a claim upon which relief can be granted, and I will grant the defendants' motions to dismiss. I will deny Gaines' request for oral argument.

# I.  Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint.  When reviewing a Rule 12(b)(6) motion, I assume the factual allegations of the complaint are true and construe them in plaintiff's favor.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief "that is plausible on its face."  *Id.*  The "factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555.  The issue in determining a Rule 12(b)(6) motion is not whether the plaintiff will ultimately prevail, but whether he is entitled to present evidence in support of his claims.  *See Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011); *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

In addition to the complaint, I may consider exhibits that are attached to the complaint, matters of public record, and materials necessarily embraced by the complaint, without having to convert the motion to one for summary judgment.  *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1081 (8th Cir. 2018); *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018).  Materials necessarily embraced by the complaint include "documents whose contents are alleged in a

complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Ryan*, 889 F.3d at 505 (internal quotation marks and citations omitted).  Accordingly, in determining defendants' motions to dismiss here, I consider Gaines' amended complaint as well as the police reports and order of protection attached to Gaines' responses to the motions, as those are matters of public record.  The order of protection and petition therefor are also documents necessarily embraced by and consistent with Gaines' amended complaint, as are the letters from the Windsor C-1 School District banning Gaines from school property.  I will not consider the other exhibits attached to Gaines' responses because they are neither documents whose contents are alleged in his amended complaint nor matters of public record.[1]

## II.  Background

On August 23 and 24, 2023, Gaines was at Windsor High School to pick up his children after school.  He observed Officer William Scott, a deputy sheriff with the Jefferson County Sheriff's Department, block the driveway of the lower parking lot, preventing vehicles from leaving that lot.  When Gaines asked Scott about it on August 24, Scott responded that the school had asked him to block the

---

[1] The video and audio recordings Gaines submitted with his responses are thoroughly summarized and indeed quoted at length in his amended complaint, the allegations of which I must consider true in determining the motions to dismiss.  I do not consider any content in those recordings beyond what is summarized and/or quoted in the amended complaint.

lot's exit so that school buses could leave the property before student drivers were released.  Gaines videorecorded his encounter with Scott as well as the stopped student traffic on August 24, and he told Scott that the process violated the students' Fourth Amendment rights.  Gaines also approached students on the parking lot, telling them that their rights were being violated.

Around noon on the following day, August 25, Dr. Jason King, Superintendent of the Windsor C-1 School District, informed Gaines that a parent had complained of Gaines' conduct and language.  Gaines responded to King that what was occurring at the school violated the law, including the Fourth Amendment.

Later in the afternoon of August 25, Gaines went to the high school to pick up his children, and he again observed Scott blocking the lower parking lot.  The high school principal, Dr. Rachel Montgomery, was with Scott.  While videorecording with his cellphone, Gaines approached Scott and Montgomery and told them – using profanities and obscenities – that what they were doing was illegal and that he intended to pursue legal action to enjoin their conduct.[2]  Gaines also threatened to stand in front of the school buses to prevent them from leaving,

---

[2] "There will also be court documents filed Monday to get the injunction against you motherfuckers for pulling this bullshit.  I'll see you motherfuckers in court.  Have a good weekend, be ready for the lawsuit stupid fucks."  (ECF 29, Amd. Compl. at ¶ 46.)  To Montgomery:  "[D]on't worry, Dr. King will be getting another email about you too, bitch, don't worry."  (*Id.* at ¶ 47.)  *See also* n.3, *post*.

and he challenged Scott to arrest him.  Calling Scott a "jackboot thug" (ECF 29, Amd. Compl. at ¶ 92), Gaines then stood in front of the buses and taunted Scott:

> [A]re you ready? . . . I'm not asking if you want to [arrest me], I'm asking if you're ready. . . . [Y]ou're gonna need help cause when you try to illegally put your hands on me, I have the legal right to, according to the U.S. Supreme Court to defend myself.  So, are you ready?  Are you ready?

(*Id.* at ¶¶ 92-96.)  Gaines moved away from the buses and asked Scott if he would stop blocking cars illegally, to which Scott replied, "[A]s soon as the last bus goes by."  (*Id.* at ¶ 99-100.)  Gaines then said,

> [N]o, no, no, no, no, I'm talking going forward on Monday?  Y'all gonna illegally block these cars?  Cause I'm telling you now, I give my word as a combat veteran, that if they block these cars on Monday those buses don't fucking move.  You got my word on it.  And I'd bring help cause I'm gonna be fucking ready, and I'm swinging on anybody who puts a hand on me.  Cop or not, watch.

(*Id.* at ¶ 101.)  Gaines returned to his vehicle and, while driving away, continued to shout profanities and obscenities at Scott and Montgomery.[3]

Superintendent King contacted Gaines later on August 25 and reported that he had received several complaints from parents regarding Gaines "cuss[ing] at the High School Principal and threaten[ing] to punch the School Resource Officer[.]"  (ECF 29, Amd. Compl. at ¶ 104.)  On Sunday, August 27, King sent Gaines a letter

---

[3] "Gaines entered his vehicle and began to leave while yelling out the window at me stating I was a 'dumb mother fucker' and then yelling at Dr. Montgomery calling her a 'fat fucking cunt.'"  ECF 41-2, Scott police rep., at p. 3; *see also* ECF 49-5, Montgomery petn. for order of prot., at p. 8.

via email informing him that he was banned from school district property for 365 days, citing school policy and parents' complaints based in part on their children's accounts.  (*Id.* at ¶ 105; ECF 41-3, King Letter dated Aug. 27, 2023.)

Gaines returned to the high school property on the morning of Monday, August 28.  Officer Scott and Officer John O'Brien, another deputy sheriff, approached Gaines and informed him that he was violating the school district's trespass notice and asked him to leave.  Gaines disputed that he was trespassing, to which Scott responded that he would be placed under arrest if he did not leave the property.  Gaines then left the property and went to the Jefferson County Sheriff's Department where he spoke with Major Andy Sides.  Sides informed Gaines that the no-trespass ban would be enforced against him, but Gaines responded that he intended to return to the school to show Superintendent King his videos of the alleged illegal conduct.

Gaines returned to the high school later that day and was met by Officers Scott and O'Brien.  Scott informed Gaines that Major Sides had instructed him to issue a citation to Gaines if he were to come onto school property, but to not arrest him.  When Gaines objected, Scott issued a citation to Gaines for violating Jefferson County Ordinance No. 205-160 – Trespassing.

On August 28, 2023, Judge C. W. Yates of the Jefferson County Circuit Court issued an *ex parte* order of protection against Gaines upon the petition of

Principal Montgomery.  (ECF 41-4, order of prot., petn.)  After a hearing on September 19 at which Gaines participated, Judge Yates granted a full order of protection against him.  (ECF 29, Amd. Compl. at ¶¶ 187, 192.)

On September 28, 2023, the Windsor C-1 School District informed Gaines that the school board considered his appeal of the no-trespass ban and that, by a vote of 6-0, the board upheld Gaines' ban from school property for 365 days. (ECF 49-6, Dubis Letter dated Sept. 28, 2023.)

Gaines filed this action on September 26, 2023.  On November 1, 2023, he filed an amended complaint in which he alleged that the conduct set out above violated his constitutional rights as well as the rights of Windsor High School students.  He brings claims against the Windsor C-1 School Board and its individual board members; Superintendent King and Principal Montgomery; the Jefferson County Sheriff's Department, Major Sides, and Officers Scott and O'Brien; and the Jefferson County Courthouse and Judge Yates.  Specifically, in his four-count amended complaint, Gaines alleges:

- Count 1 – that, in retaliation for Gaines exercising his First Amendment right to criticize government action:
  a)  Superintendent King and the Windsor C-1 School Board banned him from school property;
  b)  Principal Montgomery, with Superintendent King's assistance, applied for and received an order of protection against him; and
  c)  Officers Scott and O'Brien threatened to arrest him and issued a trespass citation on the instruction of Major Sides.

- Count 2 – that, in violation of the Fourth Amendment right to be free from

unlawful seizure:
a) with the consent of Superintendent King and the Windsor C-1 School Board, Officer Scott and Principal Montgomery unlawfully detained Windsor High School students by preventing them from leaving the school parking lot;
b) Officers Scott and O'Brien threatened to arrest him for trespass and issued a trespass citation on the instruction of Major Sides and at the urging of Superintendent King; and
c) Judge Yates threatened him with contempt of court for making a public comment on a social media platform.

- Count 3 – that, in violation of Gaines' Fourteenth Amendment right to due process:
  a) Judge Yates deprived him the opportunity to defend himself and present evidence on Principal Montgomery's petition for order of protection; and
  b) Judge Yates considered improper evidence in determining to grant a full order of protection against him, thereby permitting Principal Montgomery to abuse the process in obtaining such order.

- Count 4 – that, in violation of 42 U.S.C. § 1985, the Windsor C-1 School Board, Superintendent King, Principal Montgomery, the Jefferson County Sheriff's Department, and Judge Yates conspired to deprive him of his civil rights as set out in the amended complaint.[4]

Gaines seeks damages in the amount of $5.7 million as well as injunctive relief "to prevent the school from blocking vehicles on the publicly accessible areas as well

---

[4] In response to defendants Yates and the Jefferson County Courthouse's motion to dismiss, as well as the Jefferson County Sheriff's Department's motion to dismiss, Gaines raises a new legal theory that municipal liability attaches to those defendants for their failure to train their employees. (*See* ECF 42, 44.) A plaintiff is not permitted, however, to raise new allegations or theories in a response opposing a motion to dismiss. *See Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017). *Cf. New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC, Inc.*, 537 F.3d 35, 57 (1st Cir. 2008) (within court's discretion to decline advancement of new theory first produced in response to motion to dismiss). Even so, Gaines' new legal theory would fail given that, as discussed below, the Jefferson County Sheriff's Department and Courthouse are not suable entities under § 1983, and immunity doctrines and § 1983 itself bar money damages and injunctive relief, respectively, against Yates in the circumstances of this case.

as to block any future or further retaliation or abuse of process."  (ECF 29, Amd. Compl. at p. 26, ¶ B.)

All defendants move to dismiss Gaines' amended complaint.

### III.  Discussion

As an initial matter, I note that Gaines did not specify in his amended complaint that he was suing the individual defendants in their personal capacities. "[A]bsent a clear statement that officials are being sued in their personal capacities, we interpret the complaint as including only official-capacity claims."  *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997) (internal quotation marks and citation omitted); *see also Gibson v. Hadzic*, No. 4:22-CV-00163 SPM, 2023 WL 6214856, at *3 (E.D. Mo. Sept. 25, 2023).  The requirement that personal-capacity claims be specifically pled applies to *pro se* plaintiffs.  *Gibson*, 2023 WL 6214856, at *3.  Because Gaines did not specifically plead personal-capacity claims against the defendants, I construe the amended complaint to assert official-capacity claims only.

A.    Jefferson County Sheriff's Department

I will dismiss Gaines' claims against the Jefferson County Sheriff's Department.  Departments of county governments are not legal entities subject to suit under § 1983.  *See Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (departments of local governments are not "juridical entities suable as

such"). "A local governmental entity, such as a county sheriff's department, which lacks the capacity to be sued under the applicable state law may not be sued in federal court under the provisions [of] Federal Rule of Civil Procedure 17." *Catlett v. Jefferson Cnty.*, 299 F. Supp. 2d 967, 968-69 (E.D. Mo. 2004). There is no provision under Missouri law establishing the Jefferson County Sheriff's Department as a distinct legal, corporate entity. It is therefore not subject to suit under 42 U.S.C. § 1983 and will be dismissed from this action.

B.    Jefferson County Courthouse and Judge Yates

To the extent Gaines' amended complaint names the Jefferson County Courthouse as a defendant, I will dismiss the court from this action. Missouri courts are not suable entities under § 1983. *See Harris v. Missouri*, No. 4:23-CV-1319 NCC, 2024 WL 2131758, at 2 (E.D. Mo. May 13, 2024). "[A] suit against a state court is, in effect, a suit against the State of Missouri, *Engel v. Missouri Cts.*, No. 4:20-CV-1258 SPM, 2020 WL 7493195, at *2 (E.D. Mo. Dec. 21, 2020), and the State of Missouri is absolutely immune from liability under § 1983 in absence of a waiver. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63 (1989) (state is not a "person" under § 1983); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir. 1999) (en banc) (§ 1983 suit cannot be brought against state agency). This absolute bar includes suits seeking injunctive relief against states and their agencies, not just suits seeking monetary damages. *Monroe v. Arkansas*

*State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007).

I will likewise dismiss Gaines' claims against Judge Yates.  To the extent Gaines seeks money damages against Yates, the State's sovereign immunity bars the claim because Gaines sues Yates in his official capacity only.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (official-capacity suits are actions against the state agency of which the officer is an agent); *Serna v. Goodno*, 567 F.3d 944, 952 (8th Cir. 2009) (Eleventh Amendment bars damages claims against the states); *Rodgers v. Univ. of Mo. Bd. of Curators*, 56 F. Supp. 3d 1037, 1049-50 (E.D. Mo. 2014) (official-capacity suits barred by sovereign immunity).  Moreover, the doctrine of judicial immunity bars Gaines' claims for damages against Yates, given that the actions of which Gaines complains were taken in Yates' judicial capacity in a matter over which he had jurisdiction.  *See Schottel v. Young*, 687 F.3d 370, 373-74 (8th Cir. 2012).

To the extent Gaines seeks injunctive relief in the form of an order blocking Yates from further retaliation or abuse of process, § 1983 provides for injunctive relief against a judicial officer only when "a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983.  Gaines does not allege that declaratory relief was unavailable or that a declaratory decree was violated.  Consequently, § 1983 bars Gaines' claim against Yates for injunctive relief.  *Justice Network, Inc. v. Craighead Cnty.*, 931 F.3d 753, 763 (8th Cir. 2019).

C.    <u>Windsor C-1 School Board, Board Members, and Superintendent King</u>

I will dismiss Gaines' claims against the Windsor C-1 School Board, its

members, and Superintendent King.

To the extent Gaines contends that the school board and King violated the

high school students' Fourth Amendment rights by unlawfully detaining them on

the school's parking lot, Gaines does not have standing to bring claims on behalf of

anyone other than himself.  *Casey-El v. City of St. Louis Dep't of Pub. Safety*, No.

4:22-CV-1225-AGF, 2022 WL 17250170, at *2 (E.D. Mo. Nov. 28, 2022); *see*

*also FDA v. Alliance for Hippocratic Med.*, 602 U.S. ___, No. 23-235, 2024 WL

2964140 (June 13, 2024) (plaintiffs who suffer no personal injury lack standing to

challenge government entity's regulation of *others*).  Gaines does not assert a

Fourth Amendment claim on his own behalf against these defendants.

Gaines also asserts that the school board and King retaliated against him for

engaging in conduct protected by the First Amendment.  Gaines specifically claims

that King banned him from school property and that the school board unanimously

approved the ban in retaliation for his criticism of Officer Scott's refusal to permit

vehicles to leave the school parking lot, for "cussing" at Scott and Principal

Montgomery, and for videorecording the encounters.  Because the conduct for

which King and the school board instituted the ban is not protected under the First

Amendment, I will dismiss Gaines' claim of First Amendment retaliation against

them.

Gaines asserts that he enjoys a First Amendment right to speak and express himself on school property because it is public property funded by taxpayer money.  Public schools, however, are non-public forums unless school authorities open the facilities for general use by the public or for limited use by some segment of the public, such as a club or organization.  *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988); *see also* Mo. Rev. Stat. § 177.031 (school board controls school property and has discretion to open it to public or limited public use).  Neither exception applies in the circumstances of this case.

Nevertheless, regardless of the public or non-public nature of the forum, "'[t]rue threats' of violence is [an] historically unprotected category of communications." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023).  "True threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Id.* (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)).  What makes a threat "true" for First Amendment purposes is not the mental state of the actor, but what the statement conveys to "the person on the other end." *Id.*  "True threats subject individuals to 'fear of violence' and to the many kinds of 'disruption that fear engenders.'" *Id.* (quoting *Black*, 538 U.S. at 360).  Accordingly, true threats are outside the protection of the First Amendment. *Counterman*, 600 U.S. at 80.  *See also United States v. Colhoff*, 833 F.3d 980, 985

(8th Cir. 2016) (threats of violence are unprotected speech).

Here, the facts alleged in Gaines' amended complaint show that Gaines made a true threat that he would commit a violent act against Officer Scott and possibly others on school property:

> 99.    Plaintiff then stated, "are y'all gonna stop blocking cars . . . illegally?"

> 100.    Officer Scott then replied, "as soon as the last bus goes by."

> 101.    Plaintiff then said, "no, no, no, no, no, I'm talking going forward on Monday?  Y'all gonna illegally block these cars?  Cause I'm telling you now, I give my word as a combat veteran, that if they block these cars on Monday those buses don't fucking move.  You got my word on it.  And I'd bring help cause I'm gonna be fucking ready, and I'm swinging on anybody who puts a hand on me.  Cop or not, watch."

(ECF 29, Amd. Compl., at ¶¶ 99-101.)  The statement that he will be "fucking ready" as a "combat veteran" to "swing[] on anybody who puts a hand on me" was not hyperbole nor made in jest.  *See Counterman*, 600 U.S. at 74.  And, when viewed in the context of Gaines' highly agitated and confrontational state, his baiting Scott to arrest him for stepping in front of school buses (ECF 29, Amd. Compl. at ¶¶ 46-47, 87, 90-96), and threatening that he would "defend" himself if Scott tried to arrest him for blocking school bus traffic (*id.* at ¶ 96 – "you're gonna need help cause when you try to illegally put your hands on me, I have the legal right . . . to defend myself.  So, are you ready?  Are you ready?"), Gaines conveyed a real possibility that violence would follow immediately or the following school

day, engendering fear in persons receiving and witnessing the threat.  (ECF 49-7,

King Letter dated Aug. 27, 2003 – "You were . . . heard stating that you would

return the following day and commit a crime on District property[.] . . . We

received a parent complaint about your behavior. . . . You threatened to punch our

school resource officer, a uniformed police officer. . . . You were weaving in

between students and scaring them[.]")  *Cf. Counterman*, 600 U.S. at 74 (true

threats do not include statements that in context do not convey a real possibility of

violence, such as "I'm going to kill you for showing up late.").

Gaines' assertion that his statements merely expressed his intent to defend

himself does not change the "true threat" nature of them.  "The existence of the

threat depends not on the mental state of the author, but on what the statement

conveys to the person on the other end." *Counterman*, 600 U.S. at 74 (internal

quotation marks and citation omitted). *See also Colhoff*, 833 F.3d at 985 ("[A]

'true threat' is 'a statement that a reasonable recipient would have interpreted as a

serious expression of an intent to harm or cause injury to another.'" (quoting *Does

v. Pulaski Cnty. Special. Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002) (en banc))).

In view of the context and environment within which Gaines made his

statements and his aggressive behavior while making them, a reasonable person

receiving or witnessing the statements would interpret them as a serious threat of

violence, subjecting them to fear of violence or injury.  The statements, therefore,

are not protected by the First Amendment.  Consequently, because defendants'

action in banning Gaines from entering upon school property was motivated by

true threats and not the exercise of protected conduct, Gaines' claim of First

Amendment retaliation fails.  *In re Kemp*, 894 F.3d 900, 906 (8th Cir. 2018).

D.    <u>Principal Montgomery</u>

I will also dismiss Gaines' claims against Principal Montgomery.

For the reasons set out above, Gaines' Fourth Amendment claim against

Montgomery that she did not permit high school students to leave the parking lot

fails for lack of standing.  To the extent Gaines asserts that, with Superintendent

King's assistance, Montgomery sought an order of protection against Gaines in

retaliation for exercising his First Amendment rights, the claim fails because

Gaines' relevant speech is not protected under the First Amendment.

Gaines alleges in the amended complaint that Principal Montgomery was

with Officer Scott on August 25, that he got out of his vehicle and approached both

Scott and Montgomery, that he engaged in a profanity-laced rant against both Scott

and Montgomery regarding the parking-lot matter, and that he then made the

threatening statements described above that he would return to school on Monday

ready to fight.  (As described above, Gaines indeed returned to school property on

Monday, August 28.)  On August 30, Gaines was served with an order of

protection that was issued by the Jefferson County Circuit Court upon

Montgomery's August 28 petition in which she stated, *inter alia*, that Gaines approached her on August 25, screamed profanities and obscenities at her, and stated that there should be multiple officers at school on Monday because he would be back to fight.  Montgomery also stated in the petition that Gaines continued to yell obscenities at her as he drove away.  Montgomery stated that she reported to her superiors that she feared for her safety because Gaines' irrational and emotional behavior appeared to be "hyper-focused" on her.  Montgomery stated that that fear increased on Monday, August 28, when she learned that Gaines was on school grounds in violation of the no-trespass ban issued by the district.  (ECF 49-5, order of prot., petn.)

As discussed above, true threats are not protected by the First Amendment, and Gaines' statement made on August 25 that he would return on Monday "fucking ready" to swing at anybody who put a hand on him constituted a true threat.  Accordingly, Montgomery's seeking an order of protection based on that statement is alone sufficient to withstand Gaines' First Amendment challenge.  But Montgomery's petition invoked not only Gaines' true threat of coming to school and being ready to fight on Monday, but also his actual appearance on school grounds on Monday which caused Montgomery to fear that Gaines intended to follow through on his threat.  Because Montgomery's petition for order of protection was based on Gaines' true-threat statements and follow-up conduct that

caused her to fear violence and disrupted her sense of safety – which is not protected speech – I will dismiss Gaines' claim of First Amendment retaliation against Principal Montgomery. *See In re Kemp*, 894 F.3d at 906. Gaines' claim that Superintendent King's assistance to Montgomery in filing the petition constituted retaliation fails for the same reason.

Finally, to the extent Gaines' claims can be construed to assert that Montgomery's filing the petition for order of protection constituted an abuse of process, the court's order granting the petition and its later issuance of a full order of protection demonstrates that Montgomery had a proper purpose in filing the petition, and that her efforts accomplished the purpose for which the process was designed. Any claim of abuse of process therefore fails. *See Malloy v. Trileaf Corp.*, No. 4:24 CV 506 CDP, 2024 WL 2320217, at *4 (E.D. Mo. May 22, 2024).

E.    Major Sides, Officer Scott, and Officer O'Brien

I will dismiss Gaines' claims against defendants Sides, Scott, and O'Brien, all of whom are deputy sheriffs of the Jefferson County Sheriff's Department.

To the extent Gaines seeks monetary relief against these defendants, sovereign immunity bars the claims because Gaines sues them in their official capacities only. *Graham*, 473 U.S. at 165-66; *Serna*, 567 F.3d at 952; *Rodgers*, 56 F. Supp. 3d at 1049-50. To the extent Gaines seeks injunctive relief in the form of an order blocking defendants from further retaliation, his claim of retaliation fails

for the following reasons.

Gaines claims that his conduct in criticizing government actors, shouting profanities at them, and videorecording them is protected by the First Amendment. He asserts that Sides, Scott, and O'Brien retaliated against him for engaging in that protected conduct by causing a citation to issue against him when he appeared at the school for a second time on August 28, 2023. Gaines contends that Sides instructed Scott and O'Brien to issue the citation, and that Scott and O'Brien issued the citation after threatening arrest.

For claims asserting retaliatory prosecution or retaliatory arrest for exercising First Amendment rights, a plaintiff must "plead and prove the absence of probable cause" for the underlying criminal charge or arrest. *Nieves v. Bartlett*, 587 U.S. 391, 400-02 (2019). The absence of probable cause is a threshold showing, which must be established before a plaintiff can proceed on a claim that retaliation was a motivating factor behind the government actor's conduct. *Id.* at 400, 404, 407-08. Here, the face of the amended complaint shows that probable cause existed for issuance of the trespass citation to Gaines on August 28, which defeats his claim that defendants Sides, Scott, and O'Brien caused the citation to issue in retaliation for his protected conduct.[5]

---

[5] Because Gaines does not assert that similarly-situated persons – that is, persons who engaged in similar conduct on school property after receiving a no-trespass ban from the school district – were not issued a citation for trespass, the exception to the no-probable-cause requirement for

As stated above, public schools are non-public forums unless school authorities open the facilities for general use, which such circumstance is not present here. *Kuhlmeier*, 484 U.S. at 267; Mo. Rev. Stat. § 177.031. Nor does a parent have the right to unfettered access to school property. *Miller v. Montgomery Cnty. R-II Sch. Dist., Bd. of Educ.*, No. 2:10 CV 78 DDN, 2011 WL 1299536, at \*3 (E.D. Mo. Apr. 1, 2011) (listing cases). The school district here issued a no-trespass ban, which it had the authority to do; and it provided notice to Gaines of the ban on August 27. *See* Mo. Rev. Stat. § 177.011, 177.031 (title and control of public school property is vested in the school district, as governed by the school board); *see also Lovern v. Edwards*, 190 F.3d 648, 655-56 (4th Cir. 1999) (school officials have authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property, and should never be intimidated into compromising the safety of those who use school property) (citing *Carey v. Brown*, 447 U.S. 455, 470-71 (1980); *Goss v. Lopez*, 419 U.S. 565, 582-83 (1975); *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968); *Bystrom v. Fridley High Sch., Indep. Sch. Dist. No. 14*, 822 F.2d 747, 751 (8th Cir. 1987)). On August 28, Gaines violated the ban twice in the presence of Officers Scott and O'Brien. The Jefferson County ordinance upon which the citation issued, No. 205-

---

establishing First Amendment retaliation does not apply to his claim. *See Nieves*, 587 U.S. at 407.

160, provides that a person commits the crime of trespassing when that person,

*inter alia*:

> 1.     Without lawful authority, or without the expressed or implied consent of the owner or his agent, shall . . . enter on any . . . lot, or parcel of ground; or

> 2.     Without lawful authority, being upon the land of another, shall fail or refuse to leave the same when requested to do so by the person lawfully in possession thereof, his agent or representative, or of a Law Enforcement Officer[.]

Jeff. Cnty. Ord. § 205.160.A.[6]

The allegations of Gaines' amended complaint show that probable cause existed for Officers Scott and O'Brien to issue a trespass citation to Gaines at Major Sides' direction when Gaines entered upon school property during the school day on August 28, 2023, in violation of the no-trespass ban lawfully imposed by the school district who controlled the property; and Gaines failed to leave the property upon Officer Scott's request.

Gaines does not plead or allege sufficient facts demonstrating the absence of probable cause for defendants' issuance of the trespass citation. Without this threshold showing, and in the absence of a claim that others who engaged in similar conduct in similar circumstances were not issued a citation, Gaines cannot state a claim that defendants' conduct toward him was in retaliation for exercising

---

[6] *Available at* https://ecode360.com/27884782#27884909 (last visited June 25, 2024).

his First Amendment rights. Gaines' claim for injunctive relief to bar further retaliation by Sides, Scott, and O'Brien will therefore be dismissed.

F. Conspiracy

Gaines brings his conspiracy claim under 42 U.S.C. § 1985, asserting that defendants Windsor C-1 School Board, King, Montgomery, the Jefferson County Sheriff's Department, and Yates conspired to violate his civil rights as set out in his amended complaint. Section 1985(1) (preventing officer from performing duties) and (2) (obstructing justice; intimidating party, witness, or juror) do not apply to Gaines' claim. To state a claim under § 1985(3) (depriving persons of rights or privileges), Gaines must allege facts showing that defendants conspired for the purpose of depriving him of equal protection of the laws, or equal privileges and immunities under the laws. *Salau v. Denton*, 139 F. Supp. 3d 989, 1001 (W.D. Mo. 2015) (quoting *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 684 (8th Cir. 2012)). Gaines makes no such equal-protection assertions here.

Nor does Gaines state a § 1983 conspiracy claim. As discussed above, Gaines' claims against the sheriff's department and Judge Yates are barred; and the school board, Superintendent King, and Principal Montgomery did not violate his civil rights as alleged. *See White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (plaintiff must prove a deprivation of a constitutional right or privilege to prevail on a § 1983 civil conspiracy claim).

The civil conspiracy claim raised in Count 4 of the amended complaint will therefore be dismissed.

G.    Oral Argument

Gaines requests oral argument on defendants' motions to dismiss. He does not seek to argue the merits of the motions, however, appearing to concede their success. Instead, he seeks to establish a record that will be "vital to what follows this dismissal" (ECF 58 at p. 1), which he anticipates will include appeal, additional retaliation against him and his children, sanctions and findings of contempt against him, and imminent incidents leading to his criminal prosecution. Because Gaines' reasons for oral argument are not relevant to the merits of the pending motions, and the material and memoranda before the Court are sufficient to determine the motions, I will deny his request for oral argument. *See* E.D. Mo. L.R. 4.02(A).

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant Jefferson County Sheriff's Department's Motion to Dismiss [30] is **GRANTED.**

**IT IS FURTHER ORDERED** that defendants Sides, Scott, and O'Brien's Motion to Dismiss [32] is **GRANTED.**

**IT IS FURTHER ORDERED** that defendants Yates and Jefferson County Courthouse's Motion to Dismiss [35] is **GRANTED.**

**IT IS FURTHER ORDERED** that defendants Windsor C-1 School Board, Dr. Rachel Montgomery, Dr. Jason King, Dan Shaul, Dustin Schwartz, Scott Brothers, Melanie Willis, Chris Casey, Michael Dubis, and Thomas Krupp's Motion to Dismiss [38] is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff Daniel Gaines' Request for Oral Argument [57] is **DENIED.**

A separate Order of Dismissal is entered this date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 16th day of July, 2024.